UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HERIBERTO GUERRERO,                         :

                Petitioner,              :      **MEMORANDUM DECISION**

      - v -                                  :      18-CV-6774 (DC)

WARDEN JAMIE LAMANNA,               :

                Respondent.            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:            HERIBERTO GUERRERO
                             Petitioner *Pro Se*
                             DIN 15A3751
                             Green Haven Correctional Facility
                             Stormville, NY  12582

                             ERIC GONZALEZ, Esq.
                             Kings County District Attorney
                             By:    Diane R. Eisner, Esq.
                                    Assistant District Attorney
                             350 Jay Street
                             Brooklyn, NY  11201-2908
                                    Attorney for Respondent

CHIN, Circuit Judge:

        In 2015, following a jury trial, petitioner Heriberto Guerrero was convicted in the Supreme Court of the State of New York, Kings County (Chun, *J*.), of first-degree assault, first-degree gang assault, and criminal possession of a weapon in the fourth degree.  He was acquitted of second-degree murder and attempted second-degree

murder. Dkt. 2 at 1; Dkt. 8 at 4. His convictions were affirmed by the Appellate Division, Second Department, *People v. Guerrero*, 55 N.Y.S.3d 67 (2d Dep't 2017) ("*Guerrero I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Guerrero*, 86 N.E.3d 569 (N.Y. 2017) ("*Guerrero II*") (DiFiore, *Ch. J.*).

In 2018, proceeding *pro se*, Guerrero filed this habeas petition pursuant to 28 U.S.C. § 2254 in the Southern District of New York. Dkt. 2. The case was thereafter transferred to this Court because Guerrero was convicted and sentenced in Kings County. Dkt. 3. The Kings County District Attorney's Office filed its opposition to the habeas petition on August 2, 2019. Dkt. 8.

For the reasons that follow, the petition is DENIED.

*STATEMENT OF THE CASE*

A.   *The Facts*[1]

The evidence at trial established the following:

Guerrero's convictions arose from an altercation between two rival gangs in Brooklyn -- "SDN," a gang from Brighton Beach, and the "Coney Island Warriors" ("CIW"), of which Guerrero was a member. There was a history of hostility and

---

[1]   The facts are drawn from the Respondent's Brief submitted to the Appellate Division in 2016. The recitation of facts set forth in the brief are supported by detailed citations to the trial transcript and exhibits. *See* Dkt. 8-11 at 72-94.

2

violence between the two gangs, including stabbings and the murder of a CIW member in 2010.  *See* Dkt. 8-11 at 72-73.

The altercation began late on June 3, 2012 and continued into the early morning of June 4, 2012.  Several members of CIW were in a car, with Guerrero driving. A group of SDN members and friends -- including Jose Herrera and Angel Reyes -- threw bottles at the car.  Guerrero and three others got out of the car and chased and caught the SDN members.  Guerrero was armed with a bottle and metal pipe.  *Id*. at 73-78. Citing the trial evidence, the Appellate Division described what ensued:

> There was testimony that [Guerrero] and three companions exited a vehicle with weapons which were visible to the witnesses present; [Guerrero] held a metal pipe and his companions had knives.  The evidence further demonstrated that the defendant led the other car occupants in chasing the victims and their group on foot through the street.  During the rapidly unfolding incident, [Guerrero] joined two of his cohorts who were already attacking [Herrera] with knives, as the fourth member of their group attacked Reyes with a knife.  The entire incident lasted approximately two minutes and the attacks on [Herrera] and Reyes occurred within close proximity, in a street approximately 32 feet wide.

55 N.Y.S.3d at 70.  Guerrero and the other CIW members got back into the car and drove off.  Herrera died from his wounds and injuries.  Reyes had a large laceration across his neck. Dkt. 8-11 at 80.  Herrera's autopsy showed that he died from multiple injuries, including ten blunt trauma impact wounds to his head and multiple stab wounds to his head, neck, and torso.  Reyes required surgery for his stab wound; he was hospitalized for four days and left with a permanent scar to his neck.  *Id*. at 84-85.

3

Later that day, one of the SDN members spoke to detectives and identified Guerrero as one of the CIW assailants. The assault was picked up on surveillance video. Guerrero's girlfriend viewed the footage at the police precinct the next day and she identified a man with a ponytail running down the street as Guerrero. He appeared to be holding a pipe. *Id*. at 81-83.[2]

The police conducted an investigation and Guerrero learned that the police were looking for him. He contacted counsel. After a brief delay, Guerrero surrendered to the police on June 11, 2012. *Id*. at 86.

**B.**     *Procedural History*

   **1.**     *State Court Proceedings*

Guerrero and a co-defendant were indicted in 2012 in Kings County. As relevant here, Guerrero was charged with murder in the second degree (relating to Herrera) and attempted murder in the second degree, assault in the first degree, and gang assault in the first degree (relating to Reyes), as well as criminal possession of a weapon. *Id*. at 68-69.

Prior to trial, the People moved to admit into evidence YouTube videos and Facebook posts that the People contended showed Guerrero's membership in CIW and the history of hostility between CIW and SDN, including a post of a rest-in-peace salute to the CIW member who had been killed in 2010 by SDN members. *Id*. at 69. The

---

[2] The video was played for the jury at trial. Dkt. 8-11 at 83.

4

trial court ruled that the People would be permitted to offer the evidence, with appropriate authentication, redactions of offensive materials, and a limiting instruction that the evidence could only be considered for motive, intent, and identity and not for propensity or disposition. *Id.* at 114-15.

In another pretrial ruling, the court held that unless Guerrero "opened the door," the People would not be permitted to elicit the underlying facts of a disorderly conduct violation that Guerrero had sustained with respect to a gang fight in 2011. *Id.* at 72.

Trial commenced in the spring 2015. At least five individuals who were either part of the SDN group, or friends of SDN members, and who were on the scene (including two victims) testified about what they saw. Police officers testified about their investigation and findings. Medical evidence was received regarding the cause of Herrera's death and the injuries suffered by Reyes and another SDN member (who testified). Dkt. 8 at 3; *see generally* Dkt. 8-11 at 72-89. Guerrero also took the stand in his own defense. *See generally* Dkt. 8-11 at 89-94.

Guerrero was acquitted of the second-degree murder charge regarding Herrera and the attempted murder charge regarding Reyes. He was convicted of first-degree assault and first-degree gang assault regarding Reyes as well as of criminal possession of a weapon in the fourth degree. *Id.* at 95. He was sentenced to concurrent

terms of 20 years on each of the assault counts and one year on the weapons count, as well as to five years of post-release supervision. *Id*.

Represented by counsel, Guerrero appealed to the Appellate Division, Second Department. He raised five claims: (1) there was insufficient evidence to support the assault convictions and therefore the verdicts were against the weight of the evidence, (2) the trial court erred in admitting evidence of Guerrero's gang membership and of the history of enmity between the two gangs, (3) he was denied due process when the prosecutor cross-examined him about his failure to contact the police prior to his arrest, (4) the trial court erred by reversing its pretrial ruling barring the People from cross-examining him about his disorderly conduct violation, and (5) his sentence was harsh and excessive. *See* Dkt. 8 at 4-5; Dkt. 8-11 at 3-4.

By decision dated May 10, 2017, the Appellate Division affirmed the convictions and sentence. *See Guerrero I*, 55 N.Y.S.3d at 69. The court held that the evidence was legally sufficient to establish Guerrero's guilt beyond a reasonable doubt as to the two assault convictions. *Id*. at 70. It held that the evidence of Guerrero's membership in CIW and the history of enmity between CIW and SDN was relevant to motive and to explain the relationship between the gangs and their members, and that the trial court did not abuse its discretion in holding that the probative value of the evidence outweighed the prejudice. *Id*. at 70-71. While the Appellate Division concluded that the trial court had erred in reversing its pretrial ruling to exclude the

6

details of the disorderly conduct violation, it ruled that the error was harmless in light of the overwhelming evidence of Guerrero's guilt. *Id*. at 71 ("Evidence of the defendant's guilt of each of the crimes of which he was convicted, without reference to the error, was overwhelming, and there is no significant probability that the error contributed to the conviction."). And it found that Guerrero's sentence was not excessive. *Id*. Although the issue was briefed, the Appellate Division did not specifically address the question of whether Guerrero was improperly cross-examined about his delay in turning himself in to the police, but it did conclude that Guerrero's "remaining contentions [were] unpreserved for appellate review and, in any event, without merit." *Id*. (citing, *inter alia*, N.Y. C.P.L. § 470.05 (contemporaneous objection rule)).

Guerrero applied for leave to appeal to the New York Court of Appeals, raising the claims he had raised in the Appellate Division. The Court of Appeals denied leave. *Guerrero II*, 86 N.E.3d at 569.

2. *Proceedings Below*

Guerrero filed this habeas petition *pro se* in the Southern District of New York, raising the same claims he raised on appeal to the Appellate Division, with the exception of the excessive sentence claim. Dkt. 2 at 5-10. After the case was transferred to this Court, the Kings County District Attorney's Office filed its opposition to the petition. Dkt. 3, 8. On October 29, 2021, the Court granted Guerrero an extension of

7

time to file reply papers until January 31, 2022, but he did not do so and has not filed any additional papers. *See* Docket Sheet at 4-5. On January 17, 2023, the case was reassigned to the undersigned.

## DISCUSSION

I.   *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017); *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012).

When considering a sufficiency argument on habeas review, "[a] federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r*

8

*Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted).  A federal court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted).  The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.2d at 811 (citation omitted).  A "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Id*. (citation omitted).  Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

        Similarly, purported evidentiary errors are rarely a basis for habeas relief.  The Supreme Court has acknowledged its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  As trial judges are "called upon to make dozens, sometimes hundreds of decisions concerning the admissibility of evidence" in any given criminal trial, "the Constitution leaves to the judges who must make these decisions 'wide latitude'" in ruling on the admissibility of evidence. *Id*. at 689-90 (citation

9

omitted). Consequently, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue *only* where petitioner can show that the error deprived her of a *fundamentally fair* trial." *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983) (citations omitted). The erroneous admission of evidence constitutes a denial of due process "only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (citation omitted).

When a federal court reviews a state court determination that an error was harmless, the federal court "may not award habeas relief under § 2254 unless the *harmlessness determination itself* was unreasonable." *Fry v. Piller*, 551 U.S. 112, 119 (2007); *accord Troche v. LaManna*, No. 19-cv-2825 (BMC), 2019 WL 2619339, at *3 (E.D.N.Y. June 26, 2019); *see Freeman v. Kadien*, 684 F.3d 30, 34-35 (2d Cir. 2012) ("A harmlessness determination regarding an underlying error of state law does not implicate a freestanding federal constitutional right. Rather, the harmlessness of evidence admitted in violation of state law is itself a question of state law . . . . As a question of state law *in toto*, it is not subject to federal habeas review." (citations omitted)).

Finally, "federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Cone v.*

*Bell*, 556 U.S. 449, 465 (2009) (citations omitted).  Federal courts may not review a state court ruling that "fairly appear[s] to rest primarily on state procedural law," as long as the procedural bar is "adequate to support the judgment." *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted).  The Second Circuit has "held repeatedly that the contemporaneous objection rule" -- that the state appellate courts will review only those errors of law that are presented contemporaneously such that the trial court is "reasonably prompted" to correct them -- "is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 103, 104 (2d Cir. 2011) (citations omitted).  Hence, the Circuit has affirmed the denial of habeas relief based on the Appellate Division's ruling that the failure of a petitioner to object at trial rendered a claim unpreserved for appellate review. *See, e.g., Garcia v. Lewis*, 188 F.3d 71, 81-82 (2d Cir. 1999) (affirming denial of habeas relief where petitioner's trial counsel failed to bring to trial court's attention a claim that he later attempted to advance on appeal).

II.     *Analysis*

Guerrero raises four claims in his habeas petition:  (1) the sufficiency of the evidence with respect to his assault convictions, (2) the admission of evidence of his gang membership and of the history of enmity between the two gangs, (3) the trial court's decision to permit the prosecution to cross-examine him about his delay in contacting the police prior to his arrest, and (4) the trial court's decision, in a reversal of

11

its pretrial ruling, to permit the prosecution to cross-examine him about his disorderly conduct conviction. I address each claim in turn.

    A.    *The Sufficiency of the Evidence*

The Appellate Division held that "the evidence was legally sufficient to establish beyond a reasonable doubt [Guerrero's] guilt of assault in the first degree and gang assault in the first degree, based on an acting-in-concert theory." *Guerrero I*, 55 N.Y.S.3d at 69 (citing N.Y. Penal Law §§ 20.00, 120.07, 120.10[1]). The Appellate Division reviewed the law and the trial evidence, and concluded that the evidence was legally sufficient to support both convictions. *Id*. at 70 (discussing the elements of both assault in the first degree and gang assault in the first degree). As the Appellate Division reviewed the sufficiency claim on the merits, its decision must be accorded "substantial deference." *Fischer*, 780 F.3d at 560.

The Appellate Division's rejection of the sufficiency argument was certainly reasonable, as there was more than enough evidence -- including the testimony of at least five eyewitnesses (including two victims), videotapes, and medical findings -- for the jury to conclude beyond a reasonable doubt that Guerrero intended, and shared his companions' intent, to cause serious physical injury to Reyes by means of a dangerous weapon or a dangerous instrument, as required for first-degree assault. *Guerrero I*, 55 N.Y.S.3d at 70 (citing N.Y. Penal Law §§ 20.00, 120.10[1] and New York cases). Likewise, the Appellate Division concluded that a reasonable jury could have

found that Guerrero and his colleagues who were attacking Herrera "were sufficiently close to the assault on Reyes that they were capable of rendering immediate assistance, and therefore [were] 'actually present' as required by [law]." *Id*. (citing N.Y. Penal Law § 120.07 and New York cases). Indeed, there was evidence presented that Guerrero and three others exited their vehicle visibly holding weapons, and that Guerrero led the others in chasing the victims on foot and joined in the attack on Herrera while a fourth member of the group attacked Reyes nearby. *See* Dkt. 8-11 at 77-78. Hence, in viewing the evidence in the light most favorable to the prosecution, as this Court is required to do, *see Fama*, 235 F.2d at 811, the jury could have found beyond a reasonable doubt that Guerrero not only knowingly participated in an attack on Herrera, as he used a metal pipe in that assault, but that he also knowingly participated in assaulting Reyes, as Guerrero led the charge and knew that his companions intended to and did use knives when assaulting him. *Guerrero I*, 55 N.Y.S.3d at 69-70.[3]

Nor does the fact that Guerrero was acquitted of the murder of Herrera and the attempted murder of Reyes undermine the sufficiency finding. As the

---

[3]   *See, e.g., Montanez v. Tynon*, No. 18-cv-1766 (JPO), 2018 WL 6268221, at *9 (S.D.N.Y. Nov. 30, 2018) (denying habeas relief where petitioner claimed there was legally insufficient evidence of second-degree gang assault, and holding that petitioner could be found guilty of gang assault even if he did not strike the blow causing injury, as long as he acted in concert with person who did cause serious physical injury to the victim); *Hiraeta v. New York*, No. 16-cv-0167 (ERK), 2017 WL 2579035, at **4-5 (E.D.N.Y. June 13, 2017) (rejecting sufficiency claim as basis for habeas relief in first-degree gang assault case where evidence permitted jury to find that petitioner shared the intent of other assailants to cause victim serious physical injury with a bicycle chain, as petitioner thereafter actively participated in the assault).

Appellate Division concluded, "the jury rationally could have found insufficient proof that [Guerrero] intended to cause the death of either [Herrera] or Reyes but that there was evidence beyond a reasonable doubt that [Guerrero], who possessed a pipe and bottle, acted in concert with the other perpetrators, each of whom had a weapon, to cause serious physical injury to Reyes." *Guerrero I*, 55 N.Y.S.3d at 70. This was a fairminded and reasonable conclusion.

Finally, in the insufficiency point in his *pro se* petition, Guerrero argues that the evidence was "legally insufficient" because "much" of the evidence at trial should not have been admitted. Dkt. 2 at 5. This argument fails for the reasons set forth below in the discussion of the other evidentiary issues.

Accordingly, Guerrero's sufficiency of the evidence claim fails.

B.     *The Gang-Related Evidence*

As for the admission of the evidence of Guerrero's membership in CIW and the history of enmity between CIW and SDN, the trial court's admission of the evidence surely did not result in a fundamentally unfair trial. Indeed, the trial court's decision to admit the evidence was reasonable. As the Appellate Division concluded, the evidence was relevant to show Guerrero's "motive and to explain the relationship among the parties." *Id*. at 70-71. The prior violence, including SDN's murder of a CIW member, was important background to explain the events of June 3 and 4, 2012, and the ferocity of the attack. *See, e.g., Gonzales-Martinez v. Kirkpatrick*, No. 16-cv-5119 (JFB),

14

2017 WL 3891649, at **10-11 (E.D.N.Y. Sept. 6, 2017) (denying habeas relief and rejecting claim that admission of evidence of petitioner's gang membership was erroneous under state law, as evidence provided context and motive). Moreover, the trial court here also ordered certain potentially offensive portions of the evidence redacted and provided a limiting instruction. *See id*. at *11 (noting that a "limiting instruction lessens the potential prejudice" of the admitted evidence "because it sufficiently clarifies the limited purpose for which the jury could consider" the evidence); *see also* Dkt. 8-11 at 114-15 (trial court instructed jury that evidence of Guerrero's gang affiliation was admitted only for consideration of his motive, intent, and identity, and further that the evidence could not be considered for purposes of Guerrero's propensity or disposition to commit crime). In these circumstances, as the Appellate Division found, the probative value of the evidence outweighed any unfair prejudice. *Guerrero I*, 55 N.Y.S.3d at 71.

This is not one of those rare cases where an evidentiary ruling provides a basis for extraordinary habeas relief; this claim fails as well.

C.   *The Evidence of Delay in Reporting to Police*

In his third claim, Guerrero argues that he was deprived of a fair trial because the prosecution improperly cross-examined him on his delay in reporting to the police, which, he contends, violated his right to remain silent. Dkt. 2 at 8. Guerrero had not objected to the challenged questions at trial, and the argument was raised for the first time on appeal to the Appellate Division. *See* Dkt. 8-11 at 117.

15

As noted above, the Appellate Division did not specifically address this claim but found that it was unpreserved and that it was, in any event, meritless. *See Guerrero I*, 55 N.Y.S.3d at 71. While it did not explicitly identify the claim, it is clear the Appellate Division was referring to Guerrero's claim that his right to remain silent was violated. The court stated that Guerrero's "remaining contentions are unpreserved for appellate review," citing C.P.L. § 470.05, the New York contemporary objection statute, and Guerrero's claim that the prosecution violated his right to remain silent was the only one raised on appeal that the Appellate Division did not explicitly mention.

The Appellate Division's determination that the claim was unpreserved for appellate review constitutes an independent and adequate ground for its decision, and thus the claim cannot be a basis for habeas review. *See, e.g., Downs*, 657 F.3d at 103, 104; *Garcia*, 188 F.3d at 81-82; *see also People v. Jean*, 987 N.Y.S.2d 630, 631 (2d Dep't 2014) ("The defendant's contentions that the People improperly used his pretrial silence to impeach his credibility at trial and made improper summation comments regarding his pretrial silence are unpreserved for appellate review." (citing C.P.L. § 470.05[2] and other New York cases)).

Moreover, as the Appellate Division concluded (albeit in conclusory fashion), the claim fails on the merits. The questions did not improperly elicit information about Guerrero's pretrial silence or refusal to speak. Rather, because there was evidence at trial that Guerrero knew the police were looking for him, Guerrero's

16

failure to reach out to the police was arguably evidence of consciousness of guilt. Dkt. 8-11 at 117.  Eliciting such evidence does not encroach on the right to remain silent. *See, e.g., People v. Mulligan*, 988 N.Y.S.2d 354, 357-58 (4th Dep't 2014) (prosecutor did not infringe on defendant's right to remain silent by cross-examining him on his failure to contact police after incident, where prosecutor's primary focus was on defendant's flight and failure to seek aid for victim); *People v. Lendore*, 828 N.Y.S.2d 567, 568 (2d Dep't 2007) (holding that "[e]vidence of flight is admissible as circumstantial evidence of consciousness of guilt," even where defendant returned within two weeks of fleeing country after incident); *People v. Kearse*, 576 N.Y.S.2d 242, 243 (1st Dep't 1991) ("Defendant's testimony concerning her failure to respond to the police efforts to see her, as elicited in the prosecutor's cross-examination, was properly admitted as evidence regarding consciousness of guilt.").

Guerrero testified that his fear of SDN members caused him to flee to New Jersey, and that he was scared because there were accusations on social media that he was responsible for Herrera's death, accusations that scared him. Dkt. 8-11 at 120-21.  In the meantime, Guerrero contacted counsel, who called the police on June 7, 2012, and made arrangements for him to surrender on June 9.  Guerrero did not surrender until June 11, 2012 -- and only after he had cut off his ponytail. *Id*. at 86.  It was in this context that Guerrero was cross-examined on his delay in reporting to the police.  The questions asked of Guerrero were not a comment on the exercise of his right to remain silent but

17

elicited evidence of his consciousness of guilt. *Id*. at 119-21; *see Kearse*, 576 N.Y.S.2d at 243. Even assuming the claim was not procedurally barred, the Appellate Division's alternative holding that the claim was meritless is entitled to deference and it is not, in any event, unreasonable.

This claim provides no basis for habeas relief.

D.   *The Evidence Relating to the Disorderly Conduct Violation*

Finally, Guerrero contends that the trial court violated his rights by reversing course and permitting the prosecution to cross-examine him regarding his prior disorderly conduct violation. Dkt. 2 at 10. Prior to trial, the court ruled that the prosecution would not be permitted to cross-examine Guerrero regarding the underlying facts of a fight in which Guerrero participated in Brighton Beach that led to a disorderly conduct conviction. Dkt. 8-11 at 124. The court made clear, however, that if Guerrero opened the door, he would permit the prosecution to cross-examine on this basis. *Id*. at 72.

After Guerrero testified on direct, the trial court concluded that he had indeed opened the door because he testified that he did not "hang out" in Brighton Beach, which, the court believed, led to the incorrect inference that Guerrero had "never done any gang related things in Brighton." *Id*. at 94. Thus, the trial court allowed the prosecution to cross-examine Guerrero about the Brighton Beach incident. The Appellate Division held that this was error, but concluded that it was harmless error in

18

light of the "overwhelming" evidence of guilt, and because "there [was] no significant probability that the error contributed to the conviction." *Guerrero I*, 55 N.Y.S.3d at 71.

The Appellate Division's ruling that the error was harmless is entitled to substantial deference and it was not objectively unreasonable. *See Fry*, 551 U.S. at 119 (holding that when a federal court reviews a state court determination that an error was harmless, the "*harmlessness determination itself*" must be unreasonable to award habeas relief). The evidence here was indeed strong, and, again, evidentiary rulings -- even if wrong -- are generally not a basis for habeas relief. *See Freeman*, 684 F.3d at 34-35 (holding that the determination of whether evidence admitted in violation of state law is harmless is "a question of state law *in toto*" and "is not subject to federal habeas review") It was not unreasonable for the Appellate Division to determine that the error (assuming there was error) did not deprive Guerrero of a fair trial and that the result would not have been any different if the questions about the fight in Brighton Beach had not been permitted.

Accordingly, there was no error of constitutional magnitude here.

## *CONCLUSION*

Guerrero has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his habeas petition is denied. Additionally, I decline to issue a certificate of appealability because Guerrero has not made a substantial showing of the denial of a

constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk shall also mail copies of this memorandum decision and the judgment to Guerrero at his last known address.

SO ORDERED.

Dated:   New York, New York
         January 27, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation